IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN AMATO, IV,<br>On Behalf Of Himself And All Others<br>Similarly Situated<br>111 N. Charles Street<br>Baltimore, Maryland  21201<br><br>　　　　　　　Plaintiff<br><br>v.<br><br>VIKING RIVER CRUISES, INC.<br>5700 Canoga Avenue, Suite 200<br>Woodland Hills, California  91367<br><br>SERVE On: President/CEO<br>Torstein Hagen<br><br>　　　　　　　Defendant | Case No. _____ |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Comes now the Plaintiff, JOHN AMATO, IV, On Behalf Of Himself And All Others Similarly Situated ("Plaintiff") in the above-styled matter, and by and through his undersigned counsel of record, files and serves this Class Complaint against Defendant, VIKING RIVER CRUISES, INC. ("Viking" or "Defendant"), and shows the Court as follows:

### I. Preliminary Allegations.

1. This matter falls under the admiralty and maritime jurisdiction of this Court within the meaning of Fed. R. Civ. P.9(h).

2. Plaintiff, John Amato, IV, is over the age 18 and is a citizen of the State of Maryland who resides within the District.

3. Defendant, Viking River Cruises, Inc., is a corporation organized under the laws of the State of California, with its headquarters and principal place of business located at 5700 Canoga Avenue, Suite 200, Woodland Hills, California 91367.

4. Defendant at all times material hereto, personally or through an agent:

a. Operated, conducted, engaged in or carried on a business venture, through agents or otherwise, in this District in the State of Maryland or had an office or agency in this District in the State of Maryland;

b. Was engaged in substantial and not isolated business activity in this District in the State of Maryland;

c. As set forth in more detail herein, Defendant's actions and/or omissions caused injury to the Plaintiff outside this state, while at or about the time of such injury, Defendant was engaged in solicitation of business within this District in the State of Maryland; and

d. At all times material hereto, Defendant was engaged in the business of providing to the public of Maryland in general and to the Plaintiff in particular, on a systematic and regular basis, for compensation, vacation cruises aboard Defendant's vessel. Defendant is in possession of the Plaintiff's ticket contract, a copy of which will be produced through discovery hereunder.

5. At all times material hereto, Defendant has operated interactive internet websites fully accessible to residents of the State of Maryland, and such internet websites

are interactive to a degree that reveals Defendant's specific intent to interact with residents of the State of Maryland.

6. In particular, Defendant has consciously, purposefully and intentionally availed itself of regularly doing business in the State of Maryland through Defendant's interactive websites, including but not limited to www.vikingrivercruises.com and /or www.vikingcruises.com, which internet websites were specifically set up by the Defendant for such purpose, and which Internet websites were and have been fully operational in Maryland at all times material hereto, and which Internet websites were utilized by the Plaintiff in making Plaintiff's decision to purchase a vacation cruise aboard Defendant's vessel "Viking VAR."

7. At all times material hereto, as set forth above, Defendant has directed substantial electronic marketing activity into the State of Maryland, via television and radio, with the manifested intent of engaging in the business of advertising, marketing and selling vacation cruises to citizens of Maryland, and such intentional electronic activity by the Defendant has, with respect to Plaintiff and other citizens of Maryland, created a potential cause of action cognizable in the courts of Maryland.

8. At all times material hereto, as set forth above, Defendant has regularly and on a large scale used the mails of the United States and other means of interstate commerce directed to residents of the State of Maryland, with the manifested intent of engaging in the business of advertising, marketing and selling vacation cruises to citizens of Maryland in the form of brochures, letters and other promotional materials, and such

3

intentional activity by the Defendant has, with respect to Plaintiff and other citizens of Maryland, created a potential cause of action cognizable in the courts of Maryland.

9. At all times material hereto, as set forth above, Defendant has directed electronic activity into the State of Maryland (including but not limited to internet, e-mail and telephonic activity), with the manifested intent of engaging in the business of selling vacation cruises to citizens of Maryland, and such intentional electronic activity by the Defendant has, with respect to Plaintiff and other citizens of Maryland, created a potential cause of action cognizable in the courts of Maryland.

10. Moreover, at all times material hereto, in addition to Defendant's interactive internet websites referenced above, Defendant has previously entered into contractual relationships with numerous travel agents located throughout the State of Maryland to advertise, market and sell Defendant's cruise vacations to residents of the State of Maryland, including but not limited to:

a. AAA of Maryland, which advertises, markets and sells tickets for Defendant's cruise vacations to residents of the State of Maryland, and which lists Defendant, Viking Cruise Lines, as a "Preferred Cruise Partner;"

b. GOING PLACES TRAVEL, which advertises, markets and sells tickets for Defendant's cruise vacations to residents of the State of Maryland at its locations in Maryland including Eastpoint Mall in Baltimore.

11. Plaintiff's cause of action for fraud hereunder is related to or arises out of Defendant's contacts with the State of Maryland as set forth above.

12. Defendant's continuous and systematic contacts with the State of Maryland and its residents as set forth above are sufficient to confer upon the courts of Maryland personal jurisdiction over the Defendant, the exercise of which would comport with traditional notions of fair play and substantial justice. The Class Members are those persons included in the definition of "the Class" in paragraph 40 below.

## II. Jurisdiction and Venue.

13. This court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity of citizenship exists between the parties. In the event this matter does not come under diversity jurisdiction of the Court, the Plaintiff shall proceed under admiralty jurisdiction.

14. Defendant, Viking River Cruises, Inc., is a California corporation with its principal place of business in the State of California. As set forth above, at all times material hereto, Defendant has sufficient minimum contacts with the State of Maryland, or otherwise intentionally availed itself of the consumer markets of the State of Maryland to render the exercise of jurisdiction by Maryland courts over Defendant permissible under traditional notions of fair play and substantial part of the events or omissions giving rise to the claims herein occurred in this judicial District.

15. The cause of action asserted in this Complaint arise under the General Maritime laws of the United States of America.

## III. The Romantic Danube Cruise.

16. At all times material hereto, Defendant owned, operated and/or controlled the vessels "Viking VAR" and "Viking TOR."

17. On or about February 20, 2018, after offer therefor and acceptance by the Plaintiff through the Defendant's interactive internet websites, and advertising through travel agent GOING PLACES, INC., the Plaintiff booked and paid for a cruise on one of Defendant's heavily-marketed Eastern European cruises on Defendant's vessel, the "Viking VAR," on Defendant's 2018 "Romantic Danube" cruise vacation through GOING PLACES, INC., who was acting in such instance as the ticket agent and booking agent for Defendant for such cruise, with sailing date of October 19, 2018, Booking No. 4928283, for himself and his partner, Wendy McCormick Daly.

18. Shortly after the date when the Plaintiff had booked and paid for his Romantic Danube cruise with Defendant's reservation and booking agent set forth in the preceding paragraph, Defendant mailed, via internet e-mail, a reservation confirmation and itinerary to the Plaintiff, neither of which included any writing limiting the liability of the Defendant (including setting forth a shorter statute of limitations) or specifying an exclusive forum for claims against the Defendant, nor did such reservation confirmation or itinerary set forth any warning of the inclusion in such contract of any additional contract terms which might limit the liability of the Defendant (including setting forth a shorter statute of limitations for filing a lawsuit) or which might specify an exclusive forum for making claims against the Defendant in connection with such cruise.

19. Because Defendant's booking and reservation agent provided the Plaintiff with the written reservation confirmation and itinerary for the Plaintiff's cruise as set forth above, and because the Plaintiff had paid in full in advance for such cruise, there was sufficient agreement at such time between the Plaintiff and the Defendant's reservation and booking agent on Defendant's behalf to create an enforceable contract (hereinafter the "Amato Contract").

20. On or about October 5, 2018, more than eight (8) months after the Plaintiff had booked and paid for his cruise vacation on Defendant's vessel, and shortly before the date of the Plaintiff's departure to begin his "Romantic Danube" cruise on Defendant's vessel, the Plaintiff received his ticket for Defendant's "Romantic Danube" cruise (hereinafter, the "Amato Ticket").

21. The Amato Contract did not include any writing limiting the liability of the Defendant, including any writing setting forth a shortened statute of limitations for filing suit against the Defendant arising therefrom. The Amato Ticket was the first notice of such limitations.

22. The Amato Contract did not include any written warning that a contract term limiting the liability of the Defendant (including a contact term specifying a shorter statute of limitations for filing suit against the Defendant) set forth elsewhere would be incorporated into such ticket contract.

23. At all times material hereto, Plaintiff had no prior or reasonable notice that the Amato Ticket purported to incorporate a contract term limiting the liability of the

Defendant (including a contract term specifying a shorter statute of limitations for filing suit against the Defendant) into such ticket.

24. The Amato Contract did not include any writing specifying an exclusive forum for claims to be made against the Defendant arising therefrom.

25. The Amato Contract did not include any written warning that a contract term specifying an exclusive forum for claims to be made against the Defendant arising therefrom would be incorporated into such ticket contract.

26. At all times material hereto, Plaintiff had no prior or reasonable notice that the Amato Ticket purported to incorporate a contract term specifying an exclusive form for claims to be made against the Defendant arising therefrom would be incorporated into such ticket contract.

27. The Plaintiff never adopted or ratified any writing which purportedly limited the liability of the Defendant for such cruise, including but not limited to setting forth a provision specifying a shortened statute of limitations period for bringing a lawsuit against the Defendant.

28. The Plaintiff never adopted or ratified any writing which purportedly specified an exclusive forum for claims made against the Defendant.

29. No limitation of liability provision (or provision setting forth a shorter statute of limitations) or exclusive forum selection clause was ever accepted by the Plaintiff as part of Plaintiff's contract with the Defendant for Plaintiff's "Romantic Danube" cruise on Defendant's vessel, the "Viking VAR" or the "Viking TOR."

30. Once payment in full in advance by the Plaintiff for such cruise had been accepted on Defendant's behalf by Defendant's booking and reservation agent in February, 2018, Defendant provided Plaintiff with a confirmed reservation and itinerary which did not include any writing which limited the liability of the Defendant for such cruise, including any writing setting forth a provision specifying a shortened statute of limitations period for bringing a lawsuit against the Defendant and so, therefore, such limitation of liability provision was not a part of the contract entered into between the Plaintiff and Defendant's ticketing and booking agent for Plaintiff's cruise.

31. Once payment in full in advance by the Plaintiff for such cruise had been accepted on Defendant's behalf by Defendant's booking and reservation agent in February, 2018, Defendant provided Plaintiff with a confirmed reservation and itinerary which did not include any writing which set forth an exclusive forum for claims made against the Defendant and so, therefore, such exclusive forum clause did not form a part of the contract entered into between the Plaintiff and Defendant's ticketing and booking agent for Plaintiff's cruise.

### IV. **Plaintiff is Defrauded as to the Cruise.**

32. Plaintiff and Ms. Daly boarded the VAR on October 19, 2018, and it never moved due to "low water levels."

33. After two nights onboard, Plaintiff and Ms. Daly were transferred to a Vienna airport hotel for two nights.

34. On or about October 23, 2018, Plaintiff and Ms. Daly were transferred to another Viking vessel, the TOR, expecting that the last three nights of the cruise might be salvaged.

35. The TOR moved for about four hours during that night to a new location. After a bus tour to another venue, Plaintiff and Ms. Daly were brought back to the TOR, which cruised for about seven additional hours before striking a bridge. The captain and crew negligently forgot to lower the wheelhouse and the ensuing collision with the bridge ripped off the top of the wheelhouse, disabling the TOR and preventing any further movement. Plaintiff and Ms. Daly were confined to spend two additional nights on the TOR without any cruising. Out of a planned week-long cruise on the Danube, the two aforesaid ships together "cruised" for a total of about eleven hours.

36. Only after boarding the VAR on October 19, 2018 did Plaintiff learn from the crew and local merchants that the "low water levels" in the Danube had been a continuous problem preventing cruising on the Danube for the immediate five months prior, dating back to at least June, 2018, bu Viking provided no timely notice of the problem to Plaintiff or gave him any opportunity to cancel or re-book.

37. Viking issued two e-mail notices, both within one week of the sailing date, that offered no timely opportunity to change the itinerary. In fact, Plaintiff called Viking's customer service upon receipt of the first notice and was told his only choices were to go or cancel at a 100% penalty. The first Viking e-mail, dated 10/12/18, falsely stated an expected disruption *only* between Regensburg and Passau. The second Viking

e-mail, dated 10/18/19, the day before sailing, falsely stated only that conditions had "worsened," that it would be necessary to board the VAR at a different embarkation point, but said nothing about its total inability to leave the dock for the first four days of the cruise.

38. Viking knew all summer 2018 that the low water levels would make any Danube cruise as scheduled here impossible.

39. Viking deliberately withheld that information from the Class so they would not cancel their trips.

40. The Class consists of all persons who purchased the Romantic Danube cruise from Viking for departure from Budapest on 10/19/18, Cruise ID VAR181019. The Class Members are so numerous that joinder of all of them is impractical. Plaintiff's claims are typical of, indeed identical to, the claims of the Class. The Plaintiff will fairly and adequately represent the interests of the Class, having no interest which is contrary to or in conflict with those of the Class, and having retained attorneys capable of prosecuting complex class action litigation. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to each member that would establish incompatible standards of conduct for the Defendant. The prosecution of separate actions by the individual Class Members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or could substantially impair or impede their ability to protect their interests. A class action is superior to other

available means for the fair and efficient adjudication of the claims presented by this Complaint. This forum is appropriate for the litigation of the claims of the entire Class. The certification criteria of Maryland Rule 2-231 and the Federal Rules are met, and certification of the above-defined Class is appropriate. Questions of fact and law predominate over any questions affecting only individual Class members.

### COUNT I

### (Negligence)

41. Plaintiff realleges, adopts and incorporates by reference the allegations set forth in paragraphs 1 through 40 above as though fully alleged herein.

42. It was the duty of Defendants to provide Plaintiff with reasonable or ordinary care under the circumstances.

43. It was the duty of Defendant to provide Plaintiff with reasonable or ordinary care under the circumstances by navigating the "Viking TOR" down the river Danube without striking a bridge, all caused by negligent failure to lower the wheelhouse to clear the bridge in question.

44. On or about October 23, 2018, Defendant, and/or its agents, servants, joint venturers and/or employees breached its/their duty to provide Plaintiff with reasonable care under the circumstances.

45. In particular, on or about October 23, 2018, Defendant, and/or its agents, servants, joint ventures and/or employees breached its/their duty to provide

Plaintiff with reasonable care under the circumstances by, *inter alia*, hitting a bridge and disabling the further movement of the ship.

46. Plaintiff was injured due to the fault and/or negligence of Defendant and/or its agents, servants, joint ventures and/or employees as follows:

a. Failing to provide safe navigation of the TOR;

b. Failing to provide a safe cruise on the TOR;

c. Failing to train crew and staff to safely navigate the vessel; and

d. Failing to take reasonable steps to identify and engage, in advance, reliable sources of transportation which might be needed for the ship's passengers during the Romantic Danube cruise.

47. At all times material hereto, Defendant had exclusive custody and control of the vessel, "Viking TOR."

48. At all times material hereto, Defendant had exclusive custody and control of the operations of the vessel, "Viking TOR."

49. At all times material hereto, Defendant was fully aware that passengers (i.e. all Class members) could be injured and denied their vacation by failing to safely navigate the river.

50. As a direct and proximate result of the negligence of Defendant, Viking River Cruises, Inc., as set forth herein, the Plaintiff and each member of the Class was injured.

WHEREFORE, this suit is brought and Plaintiff claims, on behalf of each member of the Class, compensatory damages of $10,000 per Class member.

## COUNT II

### (Fraud)

51. Plaintiff adopts and realleges herein each and every factual allegation of paragraphs 1-50 hereof.

52. Viking knew, and deliberately failed to timely disclose, about the low water levels and the resulting impact on their vessels' inability to sail, at least since June, 2018. Viking's failure to disclose same was deliberately intended to keep Plaintiff and the Class from canceling their cruises in time to get the appropriate refunds. Viking expected that the Class would rely on their non-disclosures and on the false disclosures made in their e-mails of 10/12/18 and 10/18/18, and Plaintiff and the Class members did so rely to their detriment.

53. When Plaintiff and various Class members did contact Viking in response to the late notices, they were told their only choice was to go or cancel at 100% penalty.

54. Plaintiff and the Class only reasonably learned of the true nature of the low water levels when they boarded the VAR and were told by crew that the situation had existed continuously since June, 2018.

55. The aforesaid actions constitute a malicious fraud by Viking upon Plaintiff and the Class, designed to keep customer funds, when they otherwise would

have canceled and collected refunds had Viking timely notified them of its inability to deliver the cruise as advertised and promised.

56. As a result of Viking's fraud, each member of the Class was injured. The actions of Viking were intentional, deliberate, malicious and justify the award of punitive damages.

WHEREFORE, this suit is brought and the Plaintiff claims, on behalf of each member of the Class, $10,000 compensatory damages and $100,000 punitive damages.

    /s/ John Amato, IV
John Amato, IV
GOODMAN, MEAGHER & ENOCH, LLP
111 N. Charles Street
Baltimore, Maryland 21201
(410) 752-3666
Attorneys for Plaintiff, John Amato, IV,
On Behalf Of Himself And All Others
Similarly Situated

## DEMAND FOR JURY TRIAL

The Plaintiff in the above-captioned case demands to have this case heard before a jury.

    /s/ John Amato, IV
John Amato, IV
Attorneys for Plaintiff, John Amato, IV,
On Behalf of Himself And All Others
Similarly Situated